UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAURIE E. MORGAN,

|                | Plaintiff, | Civil Action No. 15-12988 |
|----------------|------------|---------------------------|
|                |            | Honorable Gerald E. Rosen |
|                |            | Magistrate Judge David R. Grand |

v.

COMMISSIONER OF
SOCIAL SECURITY,

Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [9, 11]

Plaintiff Laurie E. Morgan ("Morgan") brings this action pursuant to 42 U.S.C. §405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [9, 11], which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

## I.     RECOMMENDATION

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Morgan is not disabled under the Act. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [11] be GRANTED, Morgan's Motion for Summary Judgment [9] be DENIED, and that, pursuant to sentence four of 42 U.S.C. §405(g), the ALJ's decision be AFFIRMED.

## II.    REPORT

### A.    Procedural History

On October 31, 2013, Morgan filed an application for DIB, alleging a disability onset date of March 1, 2011. (Tr. 124-29). This application was denied at the initial level. (Tr. 77-80). Morgan filed a timely request for an administrative hearing, which was held on March 11, 2015, before ALJ Timothy Christensen. (Tr. 44-62). Morgan, who was represented by attorney J.B. Bieske, testified at the hearing, as did vocational expert Kelly A. Stroker. (*Id.*). On April 13, 2015, the ALJ issued a written decision finding that Morgan is not disabled under the Act. (Tr. 26-39). On July 2, 2015, the Appeals Council denied review. (Tr. 1-4). Morgan timely filed for judicial review of the final decision on August 24, 2015. (Doc. #1).

### B.    Framework for Disability Determinations

Under the Act, DIB are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §423(d)(1)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits … physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in

the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps ....  If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]."  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

## C.    Background

### 1.    Morgan's Reports and Testimony

At the time of the administrative hearing, Morgan was 59 years old.  (Tr. 47).  She lived in Michigan most of the time but also had a house in Florida.  (Tr. 57).  In fact, she flew in from Florida to attend the administrative hearing.  (*Id.*).  Starting in 2009, her husband worked outside of the country, so Morgan spent time living abroad:  in 2009, she lived in India for six months (three months at a time)[1] and in 2011, she lived in China for more than six months (she spent six months there, returned to the United States, and then went back to China).  (Tr. 58-59, 356, 360, 368).  She completed college and earned a degree in German language and education.  (Tr. 47).  Previously, between 2001 and 2008, she worked for Volkswagen as an executive coordinator (or executive assistant).  (Tr. 47-48, 149).  But in 2008, she lost her job.  (Tr. 56).  Volkswagen of

---

[1] On August 5, 2011, Morgan reported to Dr. Shailaja Rastogi that she "had been posted in India for about 6 months last year."  (Tr. 356).  According to this statement, Morgan lived in India in 2010.

America's corporate headquarters relocated to Virginia, however, her job was not relocated.  (Tr. 56-57).  This was Morgan's last job.  After Volkswagen relocated and she was laid off, she stopped working.  (Tr. 148).

Morgan alleges disability as a result of various physical conditions, including those involving her neck, back, and sciatic nerve.  (*Id.*).  After trying physical therapy and getting X-rays, she had surgery on her spine in 2013, which she said did not alleviate her neck pain.  (Tr. 49-50).  As a result, she "still [can't] hold [her] head up without extreme pain."  (Tr. 50).  She had three epidural injections for her lower back, which she testified were "very painful and they did not help at all."  (Tr. 51-52).  She also had surgery on her big toe, which at the time of the administrative hearing, she was still in physical therapy for.  (Tr. 48, 56).  To this, she added having "growing arthritis" and "panic anxiety disorder."  (Tr. 48-49, 56).

Morgan takes several medications, including Hydrocodone (for pain), Tizanidine (a muscle relaxer), Xanax (for anxiety and to help her sleep), Gabapentin (for nerve pain), and Lexapro (for anxiety).  (Tr. 178).  These medications cause side effects, such as blurred vision, which makes it hard to read (even with glasses on); dry mouth, which makes it hard to speak; and possibly numbness in her fingers, which makes it hard to use a keyboard.[2]  (Tr. 54-55).  Her doctors suggested she take her medications at night to increase the chances of sleeping through the night.  (Tr. 55).  Otherwise, her pain is worse when she wakes up in the morning.  (*Id.*).  In addition to pain medications, Morgan finds relief by taking a nap with a heating blanket every day and by lying down in a certain position.  (Tr. 55-56).  Her physical therapist showed her how to get in this position, which gives her a flat back and flat neck by placing pillows under her

---

[2] During the administrative hearing, Morgan said she did not know if the numbness in her fingers was from a cervical spine condition or her pain medication, but she asserted "I have to say that it could be from the drugs."  (Tr. 54).

4

knees.  (Tr. 55).  Morgan estimated that she gets in this position twice a day.  (*Id.*).  Morgan recounted a conversation with her anesthesiologist where he said they have "exhausted everything [they] can do" because other than the surgery performed on her spine in 2013, her disc degeneration cannot be operated on and is "going to get worse in time."  (Tr. 56).

Morgan testified that she can sit at a computer and hold her head at the angle necessary for typing on a keyboard for ten to fifteen minutes.  (Tr. 50).  After that, because of the pain, she needs to lay back or support her neck.  (*Id.*).  She can sit for ten minutes, stand for ten minutes, walk for twenty minutes, and lift up to ten pounds.  (Tr. 51, 53).  She is able to walk around her house, walk her dog up to three city blocks, and load groceries.  (*Id.*).  She goes grocery shopping two times a week.  (Tr. 191).  She goes outside daily and does not need to be accompanied when she leaves her house.  (Tr. 191-92).  She is able to drive a car, but after ten minutes, she needs a form of neck support.  (Tr. 191).  She is able to feed her dog, dress herself, prepare simple meals and snacks, do laundry, dust, and put dishes in a dishwasher.  (Tr. 189-90).  She is able to pay bills, count change, handle a savings account, and use a checkbook.  (Tr. 191).  She is able to read and watch DVDs on a daily basis, although she can only read for thirty minutes at a time.  (Tr. 192).  She is able to socialize and does not have problems interacting with others.  (Tr. 192-93).

### 2.    *Medical Evidence*

The Court has thoroughly reviewed Morgan's medical record.  In lieu of summarizing her medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

### 3.    *Vocational Expert's Testimony*

Kelly A. Stroker testified as an independent vocational expert ("VE") at the

administrative hearing.  (Tr. 59-61).  The VE characterized Morgan's past relevant work as an executive assistant as skilled in nature.  She said it is sedentary according to the Dictionary of Occupational Titles ("DOT") but light according to Morgan.  (Tr. 59).  The VE said the clerical skills from this position would transfer to other skilled or semi-skilled positions, most of which are sedentary.  (Tr. 60).  The ALJ asked the VE to imagine a hypothetical individual of Morgan's age, education, and work experience that was limited to light work; could perform postural activities occasionally; and overhead work with the upper extremities would be limited to frequent.  (*Id.*).  The VE testified that the hypothetical individual would be capable of performing Morgan's past work.  (*Id.*).

###### D.    The ALJ's Findings

At Step One of the five-step sequential analysis, the ALJ found that Morgan did not engage in substantial gainful activity between March 1, 2011 (her alleged onset date) and December 31, 2014 (her date last insured).  (Tr. 28).  At Step Two, the ALJ found that Morgan has the severe impairments of degenerative disc disease, including status-post cervical spine surgery and status-post right big toe surgery.  (*Id.*).  At Step Three, the ALJ found that Morgan's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment.  (Tr. 30).

The ALJ then found that Morgan retains the RFC to perform light work with the following additional limitations:  only occasional postural activities and any overhead work with the upper extremities would be limited to frequent.  (*Id.*).

At Step Four, the ALJ concluded, based in part on the VE's testimony, that Morgan is able to perform her past relevant work as an executive assistant.  (Tr. 38).  As a result, the ALJ concluded that Morgan is not disabled under the Act.  (Tr. 39).

E.      **Standard of Review**

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. §405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human*

7

*Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).  There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record.  *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted).   If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion."  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion'").

## F.    Analysis

In her motion for summary judgment, Morgan argues that:  (1) the ALJ erred by determining a RFC that did not reflect all of her limitations, including those involving sitting, standing, walking, and the ability to hold her head in a fixed position; and (2) the ALJ failed to meet the Commissioner's Step-Four burden in finding that Morgan could perform her past relevant work as an executive assistant, when the medical evidence and testimony indicated that she could not hold her head up on a sustained basis, in addition to other limitations.  Each of these arguments is addressed below.

### 1.    *Substantial Evidence Supports the ALJ's RFC Determination*

Morgan argues that the ALJ erred in determining a RFC that did not reflect all of her limitations, including those involving sitting, standing, walking, and the ability to hold her head in a fixed position.  (Doc. #9 at 14).  According to Morgan, by not taking these limitations into account, the ALJ gave no weight to her treating physician's opinion regarding these functional

areas, and therefore, did not adequately account for the physician's "superior position as a treating expert." (*Id.* at 19). Courts have recognized that an ALJ "'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley*, 581 F.3d at 406 (internal quotations omitted). While treating source opinions are entitled to controlling weight under these circumstances, it is "error to give an opinion controlling weight simply because it is the opinion of a treating source" unless it is well-supported and consistent with the record as a whole. *Soc. Sec. Rul. 96-2p*, 1996 WL 374188, at *2 (July 2, 1996); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) ("Treating physicians' opinions are only given such deference when supported by objective medical evidence."). If the ALJ declines to give a treating physician's opinion controlling weight, he must document how much weight he gives it, considering a number of factors, including the "length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. §404.1527(c)(2) (ALJ must "give good reasons" for weight given to treating source opinion)).

Dr. Shailaja Rastogi, Morgan's treating physician, filled out a Treating Physician Residual Functioning Capacity Statement ("RFC Statement") on November 7, 2013. (Tr. 428-29). On that form, Dr. Rastogi simply checked boxes indicating that in an eight-hour workday, Morgan can sit for four hours and stand or walk for three hours. (Tr. 428). She opined that Morgan requires the option to sit or stand at will, however, the use of a cane is not medically

necessary.  (*Id.*).  Dr. Rastogi also opined that Morgan can lift up to ten pounds frequently (one-third to two-thirds of the day), ten to twenty-five pounds occasionally (up to one-third of the day), and should never lift between twenty-five and fifty pounds.  (*Id.*).  Dr. Rastogi further opined that Morgan can occasionally (up to one-third of the day) bend, stoop, squat, kneel, and keep her head in a fixed position.  (*Id.*).  It is Dr. Rastogi's opinion that Morgan can occasionally handle, perform fine manipulation, reach, and operate foot controls—on both her left and right side.  (Tr. 429).  As for pain, Dr. Rastogi checked a box saying that Morgan's pain is moderate (could be tolerated but would cause marked handicap in the performance of the activity precipitating pain).  (*Id.*).

The ALJ specifically considered Dr. Rastogi's opinion, evaluating it as follows:

> These opinions were given some weight as the claimant's primary care physician from August 2011 through November 2013 and to the extent that it was consistent with the objective medical evidence, but were given little weight otherwise.  In contrast, the objective evidence showed that the claimant ambulates with a non-antalgic, steady, or normal gait; could heel walk, toe walk, and tandem walk; had negative straight leg raise tests; and at times was also observed to have a normal range of motion in her spine …. Accordingly, Dr. Rastogi's opinions regarding the claimant's ability to stand/walk, handle, manipulate, reach, operate foot controls, and require a sit/stand option were given little weight.  Dr. Rastogi's opinions are otherwise not inconsistent with [the] above residual functional capacity as her opinions exceed the residual functional capacity or are the same.

(Tr. 37 (internal citations omitted)).  In other words, the ALJ afforded some weight to the portion of Dr. Rastogi's opinion that addressed Morgan's inability to carry more than twenty-five pounds and her ability to occasionally bend, stoop, squat, kneel, and keep her head in a fixed position, as evidenced by the fact that the RFC limited Morgan to only light work with occasional postural activities.  (Tr. 30, 37).

The ALJ can give "less weight" to a medical opinion where a physician simply checks boxes and does not supply a narrative explanation for the basis of the opinion.  *See Buxton v.*

*Halter*, 246 F.3d 762, 773 (6th Cir. 2001) ("[T]he ALJ 'is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation.'") (internal citations omitted).   Here, the Commissioner points out that Dr. Rastogi filled out the RFC Statement on behalf of Morgan by just circling numbers and checking boxes.   (Doc. #11 at 18 (citing Tr. 428-29)).   Dr. Rastogi did not include a narrative or explanation for her answers, either handwritten directly on the form or as an attachment.   (Tr. 428-29).   But even if she had, Dr. Rastogi's answers are not supported by her treatment notes; Dr. Rastogi's notes do not provide objective medical evidence to support her assessment of Morgan's functional limitations with regard to sitting, standing, walking, keeping her neck in place, and pain.   Moreover, Dr. Rastogi's opinion as to Morgan's functional limitations is at odds with other evidence in the record.

An ALJ may accept only part of a treating source's opinion and reject others, so long as he articulates "good reasons" for the weight assigned.   *See Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 651 (6th Cir. 2009).   In this case, the ALJ gave good reasons for affording some weight to Dr. Rastogi's opinion regarding Morgan's limitations.   Specifically, he recognized that Dr. Rastogi was Morgan's primary care physician from August 2011 through November 2013, and indicated that some of the limitations imposed by Dr. Rastogi were consistent with the objective medical evidence.   (Tr. 37).   To the extent that they were consistent, the ALJ adopted these limitations in formulating the RFC.   (*Id.*).

So too, did the ALJ give good reasons for affording "little weight" to the portion of Dr. Rastogi's opinion related to Morgan's ability to stand or walk, handle, manipulate, reach, operate foot controls, and require a sit/stand option; he appropriately found these portions of Dr. Rastogi's RFC Statement to be inconsistent with the objective medical evidence.   (*Id.*).   Morgan

argues that Dr. Rastogi's opinions regarding sitting, standing, walking, and disruption of activity due to pain should have been given more weight because they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the record." (Doc. #9 at 19). But the Court finds that the ALJ's decision to discount these portions of Dr. Rastogi's RFC Statement is supported by substantial evidence.

### a. Sitting, Standing, and Walking

As the ALJ points out, objective medical evidence shows that Morgan ambulated with a "non-antalgic, steady, or normal gait; could heel walk, toe walk, and tandem walk; had negative straight leg raise tests; and at times was also observed to have a normal range of motion in her spine." (Tr. 37 (internal citations omitted)). Morgan characterizes these findings as "isolated facts" that "do not fairly meet the substance of [her] claim that … she had spinal pain when sitting, for example." (Doc. #9 at 18). But a review of the record shows otherwise.

Dr. Rastogi's RFC Statement indicates that Morgan can sit for four hours in an eight-hour workday and that she requires the option to sit or stand at will. (Tr. 428). But Dr. Rastogi's treating notes do not mention that Morgan has difficulty sitting. In November 2013, Morgan told Dr. Viji Thomas that her neck and back pain is "made worse by prolonged sitting and driving and computer work." (Tr. 340). But the record also contains a note by Dr. Thomas that Morgan was "going abroad for three months," which would require Morgan to sit on a plane for a prolonged period of time—at least double the time in an eight-hour workday.[3] (Tr. 342). Furthermore, this statement regarding prolonged sitting was her subjective account; Dr. Thomas'

---

[3] A Google search shows that the flight time for a nonstop flight on Delta Airlines from Detroit, Michigan to Shanghai, China is fourteen hours and twenty minutes. If not flying direct, the trip can take significantly longer. As noted by the ALJ (Tr. 36) and the Commissioner (Doc #11 at 16, 21), Morgan's ability to make this trip (in addition to trips back and forth between Michigan and Florida) calls into question her alleged inability to sit and hold her neck up throughout an eight-hour workday.

objective findings do not elaborate on any difficulty sitting.  (Tr. 341-43).  Likewise, he does not suggest that Morgan refrain from sitting.  (*Id.*).  On the contrary, he recommends she start physical therapy and continue doing home exercises, following up with him as necessary.  (Tr. 342).

The State agency consultative examiner, Dr. Jose Mari G. Jurado, and the State agency medical consultant, Dr. Myung Ho Hahn, address the issue of sitting.  Their findings contribute to substantial evidence in the record in support of the ALJ's decision to give little weight to this portion of Dr. Rastogi's RFC Statement.  In December 2013, one month after Morgan saw Dr. Thomas, Dr. Jurado opined that Morgan "can sit and stand without assistance."  (Tr. 439).  That same month, Dr. Hahn opined that Morgan could sit (with normal breaks) for six hours in an eight-hour workday.  (Tr. 70).  Both of these findings support the ALJ's decision to discount Dr. Rastogi's opinion regarding Morgan's ability to sit.

The ALJ's decision regarding Morgan's ability to stand is also supported by other substantial evidence in the record.  Multiple times, Dr. Rastogi characterized Morgan's "station" as "normal."  (Tr. 312, 358, 362, 366, 370, 392).  Morgan reports that standing aggravates her neck and back pain, but at one point, she rated this pain as only being a two out of ten.  (Tr. 254, 591).  Except for one instance in which Dr. Thomas advised Morgan to take periods of rest (Tr. 511), Morgan's physicians did not instruct her to stay off of her feet.  In addition, medical findings throughout the record indicate that Morgan is capable of standing; for instance, her muscle strength in her bilateral lower extremities consistently scored a five out of five.  (Tr. 261, 483, 497, 501, 506, 510, 565, 589, 592).

As for walking, between August 2011 and May 2013, Dr. Rastogi noted that Morgan's "gait" was "normal" and added that she "can undergo exercise testing and/or participate in [an]

exercise program." (Tr. 312, 358, 362, 366, 370, 392). Between October 2013 and October 2014, Dr. Rastogi characterized Morgan's "gait" as "steady." (Tr. 423, 431, 535, 539, 544). And other physicians and medical providers who saw Morgan between 2011 and 2015, in addition to Dr. Rastogi, noted that Morgan's gait was "normal" or "non-antalgic." (Tr. 243, 256, 262, 264, 341, 347, 352, 453, 457, 480, 493, 497, 502, 506, 589). Dr. Thomas indicated that Morgan could heel walk and toe walk (Tr. 493, 497, 501, 506) and that she denied using a supporting device. (Tr. 492, 496, 500, 505, 509). Similarly, Dr. Jurado, the consultative examiner, noted that Morgan is "able to ambulate without a cane" and can walk on her heels and toes and tandem gait. (Tr. 439, 443). Furthermore, when Morgan received physical therapy in 2014, her treatment plan did not include "improv[ing] ambulation" or "improv[ing] balance and coordination." (Tr. 484-85).

Even after each of Morgan's surgeries—one on her spine (an anterior cervical disc fusion) in 2013 and another on her big toe in 2014—Dr. Michael Donahue placed no restrictions on her movement and told her to "ambulate to her tolerance." (Tr. 266, 556-57). In fact, just six weeks after her spine surgery, Dr. Donahue noted that "[o]verall she is doing extremely well" and that Morgan's main complaint was hoarseness—not difficulty sitting, standing, or walking. (Tr. 268). Morgan's big toe surgery affected her ability to walk, however, her rehab potential was "excellent." (Tr. 577-78). Just two months later, Morgan was "in regular shoe wear" and Dr. Donahue once again observed that she was doing well. (Tr. 556-57). In February 2015, Morgan was discharged from physical therapy after just three sessions, with a note saying the goals established "were achieved," and Morgan was expected to continue improving through a home exercise program. (Tr. 574). One month later, in March 2015, Christopher Wittmann, Physician Assistant for Dr. Damon Vu, noted that Morgan's gait was "normal." (Tr. 589).

14

Based on these objective findings in the record, the Court concludes that substantial evidence supports the ALJ's RFC determination regarding Morgan's ability to sit, stand, and walk.

### b.  Ability to Hold Her Head in a Fixed Position

Dr. Rastogi also checked a box in the RFC Statement that says Morgan can only occasionally (up to one-third of the day) keep her head in a fixed position.  (Tr. 428).  But in her notes, Dr. Rastogi does not mention that Morgan has difficulty holding her head in a fixed position.  Instead, Dr. Rastogi's notes from her physical exams of Morgan's "head and neck" either say that Morgan has "decreased rotation" (Tr. 358, 362, 413, 423, 431, 544) or "normal alignment and mobility."  (Tr. 312, 366, 370, 392, 535, 539).  Other medical providers also note that Morgan's neck has decreased rotation (Tr. 347, 352) or that it is "supple with full range of motion."  (Tr. 453, 458).  In April 2013, Dr. Donahue noted that Morgan's range of motion was "severely decreased specifically with upward gaze."  (Tr. 262).  The objective medical findings in the record address Morgan's neck rotation, alignment, mobility, and range of motion; they do not address Morgan's ability to keep her neck in a fixed position or to hold her head up.  These allegations are therefore not supported by substantial evidence in the record.

A review of additional evidence in the record also supports the ALJ's RFC determination. The record contains Morgan's subjective complaints of neck pain and weak neck muscles.  (Tr. 266, 345, 360, 364, 368, 456, 486, 492, 497, 502, 505).  Morgan also complained of difficulty holding her head upright, which worsened in June 2011 because she was not compliant with her home exercise program.  (Tr. 219-20, 241).  After that, she went to China, and it got even worse. (Tr. 260).  But in 2012, she reported to Dr. Rastogi that the medication she was taking gave her relief.  (Tr. 360).  And after her spine surgery in 2013, she "denie[d] any radiating upper

extremity pain that she had prior to surgery." (Tr. 270). As mentioned above, her biggest complaint after this surgery was some moderate hoarseness. (*Id.*). A few months later, in September 2013, Morgan was discharged from physical therapy because her "goals [were] achieved." (Tr. 585). Importantly, her discharge evaluation says she "manages reading and computer work with proper posture." (*Id.*). Overall, Morgan reported that her daily symptoms improved sixty percent. (*Id.*).

Substantial evidence therefore supports the ALJ's RFC determination regarding Morgan's ability to hold her head in a fixed position.

### c. Disruption of Activity Due to Pain

Dr. Rastogi's records consistently note that Morgan is "in no acute distress" (Tr. 357, 361, 365, 369, 391, 422), except for one day, in which she noted that Morgan "appear[ed] in pain" (Tr. 431), and a few other days, in which she commented about Morgan appearing anxious. (Tr. 534, 539, 543). Dr. Rastogi's notes often document the reason for Morgan's appointment or the "chief complaint" as a "refill for pain meds," at times due to the fact that Morgan was living in China and either forgot her medication or needed her medication supply to last a few months. (Tr. 356, 360, 364, 368, 368, 421, 538). As a result, in a single appointment, Morgan would request three to six-month refills of her pain medication. (Tr. 368, 380).

Like Dr. Rastogi, other physicians who saw Morgan between 2012 and 2015 noted that she was in "no acute distress" (Tr. 10, 11, 260, 262, 264, 266, 268, 270, 341, 352, 480, 493, 497, 501, 506, 510, 562, 565, 588) or in "no apparent distress." (Tr. 453, 457). In September 2013, when Morgan was discharged from physical therapy after her spine surgery, her physical therapist Laurie Kowalick assessed that she made "significant progress with pain reduction" and improved her strength, function, and range of movement. (Tr. 585). In May 2015, Dr. Jeffrey

Vasta noted that "[t]he current treatment plan, including medications, is helping to control pain toward the goal of improved function in the following areas:  activities of daily living and ability to perform home maintenance."  (Tr. 11).  As mentioned above, Morgan leaves her house every day and goes grocery shopping twice a week.  (Tr. 191).  She is able to carry out daily activities such as walking and feeding her dog, dressing herself, preparing simple meals and snacks, doing laundry, dusting, and putting dishes in a dishwasher.  (Tr. 51, 189-190, 264).  For exercise, she "walks and does a home exercise program."  (Tr. 497, 501, 506).  But also, her activities have gone beyond that, in terms of physical exertion:  she has done weeding, helped her mother move, and gone swimming in her condominium's pool.  (Tr. 11, 215, 222).  While Morgan did complain about feeling pain after doing these activities (*id.*), the fact that she engaged in them is still additional evidence which calls the severity of the limitations she alleges into question.  Furthermore, regarding her functional ability to work, Dr. Jurado characterized her limitations as being "mild to moderate."  (Tr. 439).

Ultimately, the ALJ did consider Morgan's alleged limitations but chose not to give them significant weight because they are not supported by objective medical evidence in the record and were inconsistent with the other evidence discussed above.  For the above reasons, the Court finds that substantial evidence supports the ALJ's RFC determination for Morgan.

> 2. *Substantial Evidence Supports the ALJ's Step-Four Determination that Morgan Can Perform Her Past Relevant Work as an Executive Assistant*

Morgan also challenges the ALJ's Step-Four determination that she could perform her past relevant work as an executive assistant when, according to Morgan, the medical evidence and testimony indicated that she had numerous limitations, including difficulty holding her head up on a sustained basis.  (Doc. #9 at 20-21).  By way of background, the VE testified at the

17

administrative hearing that Morgan's past relevant work as an executive assistant was sedentary in exertion in the DOT, although Morgan characterized it as light.  (Tr. 59).  The ALJ then presented the VE with a hypothetical claimant of the same age, education, and work background as Morgan, who was able to perform light work (meaning he adopted Morgan's characterization of the job as "light"); could perform postural activities occasionally; and overhead work with the upper extremities would be limited to frequent.  (Tr. 60).  The VE testified that these restrictions would allow for the performance of Morgan's past relevant work.  (*Id.*).  The ALJ also presented the VE with a hypothetical claimant of the same age, education, and work background as Morgan, who was limited to simple, unskilled work, but because of symptoms such as pain, would likely be "off task" twenty percent or more of a given day.  (*Id.*).  The VE testified that these restrictions would result in there being no competitive work for that individual.  (*Id.*).  The VE explained that this answer is based on her professional experience; the DOT does not address off-task time.  (Tr. 61).  Relying in part on the VE's testimony, the ALJ subsequently found that Morgan is able to perform her past relevant work as an executive assistant.  (Tr. 38).

In her motion, Morgan argues that she could not perform her past work as an executive assistant "because she could not keep her head in a fixed position or do the required sitting." (Doc. #9 at 21).  In making this argument, Morgan cites to the VE's testimony regarding "being off-task" and her own testimony regarding the tasks her job required her to perform.  (*Id.*).  The problem for Morgan, however, is that the ALJ did not find that her alleged limitations with keeping her head in a fixed position and sitting were supported by objective medical evidence in the record.  (Tr. 30-38).  Morgan cites to testimonial evidence from the administrative hearing, but she does not cite to objective medical evidence in the record that the ALJ should have relied

upon in making his Step-Four determination.[4]   (Doc. #9 at 21).   Morgan also cites to Dr. Rastogi's RFC Statement, which indicates that Morgan can sit for four hours out of an eight-hour workday and keep her head in a fixed position for up to one-third of the day.   (*Id.* at 20 (citing Tr. 428)).   But as explained above, these findings are not supported by Dr. Rastogi's notes or those of Morgan's other medical providers.   Furthermore, Dr. Hahn opined that Morgan could sit (with normal breaks) for six hours in an eight-hour workday.   (Tr. 70).   Dr. Hahn, like the VE and the ALJ, found that Morgan is capable of performing her past relevant work as an executive assistant.   (Tr. 72-73).   Similarly, regarding her functional ability to work, Dr. Jurado concluded that Morgan's limitations are "mild to moderate."   (Tr. 439).

Moreover, Morgan identified no objective medical evidence that, in a given day, she would be off task twenty percent or more.   In support of this alleged limitation, Morgan cites to Dr. Rastogi's RFC Statement, which indicates that Morgan's pain "would disrupt her ability to perform activities."   (Doc. #9 at 18 (citing 428-29)).   But nowhere in the RFC Statement, or elsewhere in the record, does Dr. Rastogi address off-task time or assign a percentage to Morgan's inability to perform activities.   (Tr. 428-29).   Morgan's other medical providers do not address off-task time either.   Even if they had, statements by a treating physician that a claimant is unable to work "are entitled to no deference because the determination of disability is a matter left to the Commissioner."   *See Stojic v. Comm'r of Soc. Sec.*, 2015 WL 9238986, at *4 (W.D. Mich. December 17, 2015) ("Here, Dr. Antinozzi's predictions of how often Plaintiff would likely be off task and miss work were conjecture, not a medical opinion.").

---

[4] In her motion, Morgan references her testimony about how her injections were very painful "and did not help at all." (Doc. #9 at 20).  The record shows, however, that Morgan reported that her pain was reduced "over 90% for two weeks" after her first injections were administered.  (Tr. 251).  Although the pain did return and the procedure was repeated, these injections did give Morgan some relief.

The Commissioner argues that Morgan's claim regarding the ALJ's Step-Four determination is essentially an RFC challenge.  (Doc. #11 at 23).  The Court agrees with this argument because Morgan's issue with the ALJ's Step-Four determination is that the ALJ allegedly failed to take her neck and sitting limitations into account.  But as discussed above, the ALJ considered her limitations to the extent they are supported by objective medical evidence when he formulated the RFC.  This RFC was then properly used in the ALJ's Step-Four analysis.  Since the ALJ's RFC determination is supported by substantial evidence, the Court finds that the ALJ's Step-Four determination is supported by substantial evidence as well.

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence.

## III.   CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that the Commissioner's Motion for Summary Judgment [11] be GRANTED, Morgan's Motion for Summary Judgment [9] be DENIED, and the ALJ's decision be AFFIRMED.


Dated: July 15, 2016                              s/David R. Grand
Ann Arbor, Michigan                          DAVID R. GRAND
                                                            United States Magistrate Judge




**NOTICE TO THE PARTIES REGARDING OBJECTIONS**

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above.  *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P.

72(b)(2); E.D. Mich. LR 72.1(d)(1).  Failure to timely file objections constitutes a waiver of any

further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431

F.3d 976, 984 (6th Cir. 2005).  Only specific objections to this Report and Recommendation will

be preserved for the Court's appellate review; raising some objections but not others will not

preserve all objections a party may have.  *See Smith v. Detroit Fed'n of Teachers Local 231*, 829

F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th

Cir. 2006).  Copies of any objections must be served upon the Magistrate Judge.  *See* E.D. Mich.

LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with

a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).  Any such response should be

concise, and should address specifically, and in the same order raised, each issue presented in the

objections.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 15, 2016.

s/Eddrey O. Butts\
EDDREY O. BUTTS\
Case Manager
